### ROARK *v.* CITIZENS BANK OF SALINE.

1. VENDOR AND PURCHASER — LAND CONTRACT — ASSIGNMENT BY AGENT VOID.

    Where the agent of the owner of land executed a contract in his own name to sell same, which was left with a bank, together with a deed signed in blank by the owner, which was to be delivered to the purchaser on the payment to the bank of $350, an assignment of said contract by said agent to his wife conveyed nothing since he had nothing to convey, and the bank properly paid the money to the executor of the estate of the owner, who had died.

2. SAME — PARTIES — RIGHTS OF OWNER OF LAND NOT A PARTY TO SUIT NOT CUT OFF.

    Nor could a decree in a divorce suit between said agent and his wife, giving the latter a lien upon the money paid to the bank, cut off the rights of the owner of the land or his executor, they not being parties to the suit.

Appeal from Washtenaw; Sample (George W.), J. Submitted April 18, 1922. (Docket No. 71.) Decided June 5, 1922. Rehearing denied July 20, 1922.

Bill by Eliza A. Roark against the Citizens Bank of Saline and others to require the payment to plaintiff of a certain sum paid into defendant bank. From a decree for defendants, plaintiff appeals. Affirmed.

*A. F. Freeman*, for plaintiff.

*John P. Kirk*, for defendants.

MOORE, J. This is a bill of complaint filed for the purpose of requiring the Citizens Bank of Saline, or Carl A. Curtiss, its cashier, to pay over to the plaintiff $350 paid to Mr. Curtiss by William Parros by reason of a contract made by Fred McKey with Mr. Parros, and the delivery to Mr. Parros of a deed made by E. W. Hunt. The plaintiff claimed to own the contract by reason of an assignment to her by Fred McKey. The contract between Mr. McKey and Mr. Parros was for the sale of real estate that was not owned by Mr. McKey, but the legal title was in Edmund W. Hunt, who married the mother of Fred McKey. The contract was left with the bank and it also held a deed from Mr. Hunt with the name of the grantee left in blank, and it was the understanding that when Mr. Parros paid the $350 mentioned in the contract, the deed left with the bank by Mr. Hunt should be delivered to Mr. Parros, and it was delivered to him when he paid the money.

It is the claim of the defendants, Citizens Bank of Saline, Carl A. Curtiss and William Parros, that the property which was conveyed to Mr. Parros by reason of the execution of the deed on September 1, 1920, by Mr. Hunt, was the absolute property of Mr. Hunt, and that any money realized from the sale of said property to Mr. Parros now belongs to the estate of Edmund

W. Hunt, he having died December 17, 1920, and that Carl A. Curtiss, as executor of his last will and testament, is entitled to the possession of the same. The chancellor who heard the case in open court made a decree in accordance with the claim of the defendants. The case is brought here by appeal.

The facts are not very much in dispute, and show that plaintiff was greatly defrauded by the defendant McKey. We will not go greatly into detail. Mrs. Hunt was sick for a considerable time before her death. Mr. McKey helped take care of her through her last illness. After her death Mr. Hunt went to the Soldiers' Home, where he later died. He left a will giving his property to his wife in case she survived him. In case of her death before Mr. Hunt died the property was to go to Fred McKey. Mrs. Hunt died before her husband did. He left about $150 in pension money and his interest in the property described in his deed to Mr. Parros. The expenses of his last illness and death were in excess of $300. The plaintiff loaned to Edmund W. Hunt in his lifetime $1,750, which was secured by a mortgage on Mr. Hunt's real estate, and which is the same real estate that was later deeded to Mr. Parros. Mr. McKey knew about this loan and evidently conceived the idea that the plaintiff possessed some property which he desired to possess. He proposed marriage to her. Before they were married he borrowed some money of her. The day they were married he borrowed more money of her, and that night he registered them at the hotel under an assumed name. He stated to her he had $350 coming to him at the defendant bank. Later he assigned to her the contract in question. Still later he obtained from her $750, claiming he had bought a business on which he had paid $250, which amount he was likely to lose unless he could make payment of the balance due. Mrs. McKey soon became convinced she had married

an unscrupulous man, and caused his arrest. He was convicted of "larceny by trick" in obtaining from her $750. Mrs. McKey also instituted divorce proceedings which resulted in a decree of divorce in her favor. It was also provided in the decree that she might resume her former name. In the divorce decree reference was made to the land contract with the following provisions:

"The said plaintiff may have and take under said land contract such remedy, action or proceeding for the recovery thereof or for the recovery of the premises embraced by the land contract as exist in law in such cases made and provided in behalf of a vendor or owner of lands in like cases where premises or real estate are conveyed ordinarily by the provisions of land contracts in this State. * * *

"It is further ordered, adjudged and decreed that in the event it shall ever be held or decided by any court having competent jurisdiction of the subject-matter and the parties properly involved that the said land contract was not turned over, assigned or transferred by said defendant to said plaintiff as herebefore stated or assumed to be, then, if the alimony both temporary and permanent and the whole thereof amounting at this time to ten hundred and five dollars as aforesaid, shall not have been paid by said defendant to said plaintiff as hereinbefore required to be paid, said plaintiff shall, by the decree of this court, have first lien on all the rights, interest and title of said defendant in and to said land contract and, to make such lien effectual to the intent and purpose that this plaintiff shall have all sums of money due and payable thereby, the further decree of this court is that said land contract is by operation of this decree, assigned, transferred and set over as of November 5, 1920, together with all rights, interest and titles as therein stated in behalf of said defendant, to this plaintiff to satisfy in part and for the amount paid, the said alimony, temporary and permanent."

In the case before us counsel claim that plaintiff purchased the land contract for value before due and without notice of alleged latent equities, and should

therefore be entitled to the $350 paid to the bank by Mr. Parros, citing 5 C. J. p. 974, paragraph 165, and other authorities.

There is no difficulty with reference to what the law is, but the question is how it is applicable to the instant case.    It is true Mr. McKey signed a contract but he never had it in his control.    After it was signed it was left in the bank.    Mr. McKey never had any interest in the real estate described in the con- tract.    The important part of the transaction was that Mr. Parros was to get title to the real estate by the payment to the bank of the amount of money mentioned in the contract, and he could only do this by means of a deed from Mr. Hunt, which was left with the bank.    The transaction was not for the bene- fit of Mr. McKey but was for the benefit of Mr. Hunt.    If the plaintiff had taken the precaution to inquire of the bank she would doubtless have learned the true situation.    She did not do this but relied upon the statements made to her by her husband who lied to her.

Counsel for appellant further contend that plain- tiff was given a lien upon the $350 in the divorce de- cree.    This contention is our justification for quot- ing so much of that decree.    It is true that the decree deals with the respective rights of Mrs. McKey and her husband to the land contract.    Neither Mr. Hunt nor any one representing him was a party to that litigation, none of the defendants in the instant case except Mr. McKey was made a party to the divorce proceeding and of course their rights could not be cut off in that proceeding.

We think the chancellor reached the right conclu- sion, and his decree is affirmed with costs to the ap- pellees.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.